UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. 2:25-cr-00160-JHC |
| Plaintiff, | ORDER |
| v. | |
| DEREK MICHAEL REEVES, | |
| Defendant. | |

**I**

**INTRODUCTION**

This matter comes before the Court on Defendant Derek Michael Reeves's motion to suppress.  Dkt. # 33.  Defendant contends that evidence obtained through a search warrant served on various electronic service providers (the ESP warrant), evidence from a November 2023 search of his apartment based on a warrant (the residential warrant), and evidence from a June 2025 search of his electronic devices based on warrant (the federal warrant) must be suppressed. The Court has considered the materials filed in support of and in opposition to the motion, the rest of the file, and the governing law.[1]  For the reasons below, the Court DENIES the motion.

---

[1] The Court finds that an evidentiary hearing is unnecessary to resolve the motion.

ORDER - 1

## II

### BACKGROUND

The following factual background derives from the applications for the three search warrants at issue.

A.    The ESP Warrant

On May 11, 2023, the National Center for Missing and Exploited Children (NCMEC) received a CyberTip from Google that Defendant had uploaded files of suspected child sexual abuse material (CSAM) to his Google Drive.  *See* Dkt. # 33-1 at 19.  Based on this tip, in October 2023, Detective Michael Garcia of the Bothell Police Department applied for a search warrant from a Washington state judge seeking a range of information from the electronic service providers AT&T, Google, WAVE Broadband, as well as the content of the subject CyberTip files.  *See id.* at 26.  In his affidavit supporting the search warrant application, Detective Garcia, who viewed two of the files, stated that "there is probable cause to believe the suspect has maintained a collection of depictions of minors engaged in sexually explicit conduct in their Google account and that once identified, their devices and/or media will contain depictions of minors engaged in sexually explicit conduct files or indicia of prior possession or viewing will be discoverable upon forensic analysis of his devices."  *Id.* at 22.  The affidavit cites RCW 9.68A.050 and RCW 9.68A.070, statutes proscribing the dealing and possession of CSAM respectively.  *Id.* at 1.  The application also lists a Bothell address associated with Defendant.  *Id.* at 22.

B.    The Residential Warrant

On November 7, 2023, Detective Garcia applied for a warrant to search Defendant's new Seattle address.  Dkt. # 33-2 at 18.  The supporting affidavit mentions Defendant's apparent move from Bothell to Seattle on or about October 2, 2023.  *Id.* at 36.  And it recounts facts

ORDER - 2

supporting the ESP warrant, including about the CyberTip. *Id.* at 29–36. It also describes Detective Garcia's "experience about collectors of depictions of [CSAM]," as well as his belief that "the individual [i.e., Defendant] responsible for the dealing and possession of [CSAM] will retain the depictions of [CSAM] and store it at the new residence . . .in their devices and/or media." Dkt. # 33-2 at 36–37. Detective Garcia ultimately concludes that "there is probable cause to believe" that the Seattle apartment would contain "digital devices and/or media" storing or depicting CSAM. *Id.* at 36–37. The affidavit also cites the same state laws as the preceding affidavit. *Id.* at 4.

After the warrant issued, on November 9, 2023, police searched the apartment and seized an ASUS laptop. *See* Dkt. # 33-3 at 2. The same day, police arrested Defendant at SeaTac airport and seized an iPhone and a Google Pixel 8 phone incident to arrest. *See* Dkt. # 33-4 at 10.

C.      The Federal Warrant

About a year and a half later, on June 27, 2025, Detective Garcia applied for a federal search warrant to reexamine the ASUS laptop and the Pixel 8 smartphone for evidence of CSAM. *See* Dkt. # 33-4 at 2–4. As with the residential warrant application, this application recounts facts about the 2023 CyberTip. *Id.* at 7–9. It cited 18 U.S.C. §§ 2252(a)(1), (b)(1). *Id.* at 2. In the supporting affidavit, Detective Garcia stated that he did "not locate anything of evidentiary value" in the iPhone, Google smartphone, or ASUS laptop in 2023. *See id.* at 10–11, ¶ 28. But he stated that "[s]ince 2023, forensic examination capabilities on digital devices have improved and increased law enforcement's ability to access digital data not previously captured by earlier versions of software utilized in this investigation," justifying a new search of those devices for CSAM. *Id.* at 11, ¶ 29. The warrant was issued on July 11, 2025. *See* Dkt. # 33-5 at 2–3.

ORDER - 3

As a result of the information uncovered by the warrants, a grand jury indicted Defendant on one count of receipt of child pornography, in violation of 18 U.S.C. §§ 2252(a)(2), (b)(1). *See* Dkt. # 12 at 1–2. Defendant now moves to suppress the CSAM evidence obtained through the search warrants, contending that they were not supported by probable cause. *See generally* Dkt. # 33.

### III

#### DISCUSSION

A.     Legal Standards

The Fourth Amendment provides that the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. While it "protects the right to be free from 'unreasonable searches and seizures,' [] it is silent about how this right is to be enforced." *Davis v. United States*, 564 U.S. 229, 230–31 (2011) (quoting U.S. Const. amend. IV). "To supplement the bare text, [the Supreme Court] created the exclusionary rule, a deterrent sanction that bars the prosecution from introducing evidence obtained by way of a Fourth Amendment violation." *Id.* at 231–32. Thus, "[e]vidence obtained during the execution of a warrant that lacks probable cause 'should generally be suppressed under the exclusionary rule.'" *United States v. Fisher*, 56 F.4th 673, 683 (9th Cir. 2022) (citing *United States v. Underwood*, 725 F.3d 1076, 1084 (9th Cir. 2013).

Probable cause exists when "the known facts and circumstances are sufficient to warrant a [person] of reasonable prudence in the belief that contraband or evidence of a crime will be found." *Ornelas v. United States*, 517 U.S. 690, 696 (1996). It requires "a reasonable nexus between the activities supporting probable cause and the locations to be searched." *United States*

ORDER - 4

*v. Pitts*, 6 F.3d 1366, 1369 (9th Cir. 1993) (citation modified).  "Those seeking the warrant must demonstrate to the magistrate their probable cause to believe that 'the evidence sought will aid in a particular apprehension or conviction' for a particular offense."  *Dalia v. United States*, 441 U.S. 238, 255 (1979) (citing *Warden v. Hayden*, 387 U.S. 294, 307 (1967)).  A magistrate "must" issue a warrant if there is probable cause detailed in an affidavit from law enforcement. *See* Fed. R. Crim. P. 41(d)(1).

B.      Analysis

Defendant contends that each warrant lacked probable cause for these reasons: He argues that the supporting affidavit for the ESP warrant unreasonably characterizes him as a "collector" of CSAM.  Dkt. # 36 at 1, 5–6.  Next, Defendant argues that the supporting affidavit for the residential warrant is based on stale information and did not articulate an adequate connection between the criminal activity—CSAM uploads from a Bothell address—and the Seattle apartment.  *Id.* at 2, 7–8.  Last, Defendant says that the supporting affidavit for the federal warrant improperly sought a reexamination of the smartphone and the laptop seized after the execution of the residential warrant, even though the affidavit stated that these items contained no evidence when they were first examined in 2023.  *Id.* at 2, 9.

The government responds that the warrants were supported by probable cause; it also argues that, even if they were somehow deficient, the motion should be denied under the good-faith exception to the exclusionary rule.  On reply, Defendant reiterates that the warrants were unsupported by probable cause and adds that the underlying affidavits should be considered "bare bones," thereby rendering inapt the good-faith exception.  *See* Dkt. # 36 at 7.

The Court considers each warrant in turn.

ORDER - 5

1.    ESP warrant

Defendant argues that the affidavit for the first warrant improperly characterizes him as a "collector" of CSAM, since it does not articulate how much CSAM qualifies one as a collector. *See* Dkt. # 33 at 1, 5–6 (citing *United States v. Weber*, 923 F.2d 1338, 1344–45 (9th Cir. 1990). Defendant says that the application "only identifies a one-time event involving the uploading of five suspected CSAM files," which does not suffice to qualify him as a collector.  Dkt. # 33 at 6.

An affidavit submitted in support of an application for a warrant "must set forth particular facts and circumstances underlying the existence of probable cause, so as to allow the magistrate to make an independent evaluation of the matter."  *United States v. Perkins*, 850 F.3d 1109, 1116 (9th Cir. 2017) (quoting *Franks v. Delaware*, 438 U.S. 154, 165 (1978)) (quotation marks omitted).  And "[s]ufficient information must be presented to the magistrate to allow that official to determine probable cause; [their] action cannot be a mere ratification of the bare conclusions of others."  *Id.* (citing *Illinois v. Gates*, 462 U.S. 213, 239 (1983) (quotation marks omitted)).

Probable cause supports Detective Garcia's affidavit.  The information from the CyberTip establishes a reasonable nexus between the activities supporting probable cause— receiving CSAM in violation of various Washington statutes—and the location to be searched, the Google account to which Defendant purportedly uploaded that CSAM.  The supporting affidavit sets forth particular facts about the upload of CSAM at issue.  *See, e.g.*, Dkt. # 33-1 at 19–22 (detailing the contents of the CyberTip reports and when the underlying files were uploaded to the Google account).  And the "details provided on the use of computers by child pornographers and the collector profile strengthens and helps provide [] context for the fair probability that [the defendant] received or downloaded images."  *United States v. Gourde*, 440 F.3d 1065, 1072 (9th Cir. 2006) (citation omitted); *see also Hay*, 231 F.3d at 636 (reasoning that

language describing CSAM collectors "form[ed] the basis upon which the magistrate judge could plausibly conclude that those files were still on the premises").

Defendant's single-upload argument also fails because it is immaterial whether the supporting affidavit properly characterizes Defendant as a "collector" of CSAM. Defendant analogizes his case to *Weber*. But in *Weber*, the Ninth Circuit's conclusion that the search warrant at issue lacked probable cause did *not* turn on the government's failure to articulate that the defendant was a CSAM collector, as Defendant here contends. Rather, the *Weber* court held that the search warrant was based on too tenuous a chain of inferences, and that the expert testimony, presented in the underlying affidavit, failed to bolster that inferential chain. 923 F.2d at 1344–45. Although the case states that *one* of the warrant's deficiencies was that it failed to say how much CSAM qualified a suspect as a "collector," this deficiency was not the basis for the Ninth Circuit's conclusion that the warrant lacked probable cause. *See id.* at 1345. And the Ninth Circuit has repeatedly held that "the question is whether contraband is likely to be on the suspect's computer, not whether the affidavit shows that the defendant did or did not fall within the class of persons likely to collect child pornography." *United States v. Kelley*, 482 F.3d 1047, 1054 (9th Cir. 2007) (citing *United States v. Hay*, 231 F.3d 630, 635 (9th Cir. 2000)).

2.      Residential warrant

Defendant argues that the residential warrant was based on stale information, since the CSAM uploads occurred on May 11, 2023 and the search of the Seattle apartment occurred on November 9, 2023. Dkt. # 33 at 8. Next, Defendant argues that the supporting affidavit for the warrant did not articulate an adequate connection between the criminal activity (CSAM uploads occurring in Bothell) and the Seattle apartment that was searched. *Id.* at 8–9.

"Information offered to support a search warrant application becomes stale when enough time has elapsed such that there is no longer 'sufficient basis to believe . . . that the items to be

ORDER - 7

seized are still on the premises.'" *United States v. Grant*, 682 F.3d 827, 835 (9th Cir. 2012) (citing *United States v. Lacy*, 119 F.3d 742, 746 (9th Cir.1997) (citation modified). "To avoid staleness, '[t]he facts must show that the property to be seized was known to be at the place to be searched so recently as to justify the belief that the property is still there at the time of the issuance of the search warrant.'" *Id.* (citing *Durham v. United States*, 403 F.2d 190, 194 (9th Cir. 1968)). But "[i]nformation underlying a warrant is not stale if there is sufficient basis to believe, based on a continuing pattern or other good reasons, that the items to be seized are still on the premises." *United States v. Schesso*, 730 F.3d 1040, 1047 (9th Cir. 2013) (citing *Lacy*, 119 F.3d at 745–46) (citation modified).

First, caselaw supports that the six-month gap does not render stale the information supporting the warrant. *See, e.g.*, *Schesso*, 730 F.3d at 1047 (twenty-month period between search warrant application and search did not mean that supporting information was stale given facts); *United States v. Arumugam*, 2020 WL 1154651, at *6 (W.D. Wash. Mar. 10, 2020) (information not stale when ten months passed between search warrant application and search).

Second, the supporting affidavit articulates good reason to believe that the property to be seized—the devices storing CSAM or else media depicting CSAM—would be present at Defendant's new Seattle apartment. In *Schesso*, the Ninth Circuit credited a detective's statement in the underlying affidavit that "individuals who possess, distribute, or trade in child pornography rarely, if ever, dispose of sexually explicit images of children because these images are treated as prized possessions." 730 F.3d at 1047; *see also United States v. Ornelas*, 2016 WL 5422031, at *4 (C.D. Cal. Sept. 27, 2016), *aff'd,* 853 F. App'x 80 (9th Cir. 2021) (affidavit stated that "defendants facing child pornography charges 'usually keep and cherish' the material, 'rarely discard' them, and usually secure them in their homes 'in a manner to avoid detection by law enforcement.'"). The underlying affidavit here presents a similar statement. *See* Dkt. # 33-2

ORDER - 8

at 13–14 ("Those who possess depictions of minors engaged in sexually explicit conduct often possess and maintain their collections of [CSAM] in the privacy and security of their home or some other secure location.  These individuals typically retain these copies of child pornographic material for *many years*." (emphasis added)); *id.* at 20–21 (Defendant "may be a collector of [CSAM] . . . [Defendant] may save his collection of [CSAM] on a variety of digital media devices, including mobile and/or portable digital devices" stored in his home and sought by the search warrant).  Thus, it was logical for Detective Garcia to conclude that Defendant would have brought the CSAM to his new apartment in Seattle.

>        3.        Federal warrant

Defendant argues that the federal warrant, seeking to reexamine the contents of the seized laptop and smartphone from the execution of the residential warrant two years prior, lacked probable cause because the underlying affidavit states that Detective Garcia "did not locate [anything] of evidentiary value" in those devices when they were first seized.  Dkt. # 33-4 at 10 (affidavit); Dkt. # 33 at 9–10 (Defendant's argument).

Defendant essentially argues that the government gets one bite at the apple, but this amounts to foofaraw.  Law enforcement may apply for a new search warrant with the development of new forensic search tools.  *See United States v. McNeely*, 2019 WL 2423522, at *3 (N.D. Cal. 2019) (citing *United States v. Sullivan*, 797 F.3d 623, 634 (2015)) ("A second warrant to make use of the latest technological tools, applied for only after such tools have become available, makes sense and is in line with 'legitimate governmental interests.'").  And once the devices were seized and searched the first time, Defendant's "expectation of privacy in [them] was 'necessarily reduced by a significant degree.'"  *McNeely*, 2019 WL 2423522, at *3 (citing *United States v. Burnette*, 698 F.3d 1038, 1049 (9th Cir. 1983)).

ORDER - 9

On reply, Defendant argues that (1) the fact he engaged in only "one isolated incident of suspected CSAM activity, lasting merely minutes," (2) the second search turned up no evidence of CSAM on the ASUS laptop or the Pixel 8 phone, and (3) the third warrant application sought to reexamine the laptop "without limitations" means that the third warrant was an unconstitutional general search.  Dkt. # 36 at 7.  But the affidavit did have limitations: It sought only "files depicting [CSAM] and account information that demonstrates [Defendant's] attempts to procure CSAM."  Next, Defendant asserts, with little argument, that the third affidavit did not articulate probable cause, but Defendant fails to engage with the affidavit's assertions that the later search was justified because Defendant fit the profile of a consumer of CSAM who may seek and delete it from their devices, and that technological advances may lead to easier recovery of evidence.  *See* Dkt. # 33-4 at 14, ¶ 37 (describing a "seek and delete" user of CSAM); *id.* at 11, ¶ 29.

4.      Good-faith exception

Last, the government in its response argues that even if the warrants lacked probable cause, they were lawful because of the good-faith exception to the exclusionary rule.  *See* Dkt. # 35 at 12–13.  The government argues that it was objectively reasonable for law enforcement to rely on the approvals of the warrants at issue by Washington state and federal judges, and that none of the four exceptions to the good-faith exception apply here.[2]  *Id.* at 13 (citing *Leon*, 468

---

[2] In evaluating the good-faith exception, courts need not resolve "whether the affidavit supported probable cause" before "proceed[ing] directly to the issue of whether there was good faith reliance." *United States v. Crews*, 502 F.3d 1130, 1136 (9th Cir. 2007).  That said, courts in this Circuit have generally inquired into whether probable cause exists before inquiring into the good-faith exception. *See, e.g.*, *United States v. Manavalan*, 2026 WL 21420, at *4–7 (W.D. Wash. Jan. 5, 2026) (concluding that challenged warrants were sufficiently particularized and not overbroad and that the warrants were executed in good faith); *United States v. Lopez*, 2008 WL 11348457, at *4–5 (C.D. Cal. Dec. 3, 2008) (finding that probable cause existed, but that the good-faith exception also applied to the warrant at issue).

ORDER - 10

U.S. at 923.  On reply, Defendant argues that each of the warrants' supporting affidavits falls into the "bare bones" exception.  Dkt. # 36 at 7.

Under the good-faith exception, "[i]f the executing officers act in good faith and in reasonable reliance upon a search warrant, evidence which is seized under a facially valid warrant which is later held invalid may be admissible."  *United States v. Michaelian*, 803 F.2d 1042, 1046 (9th Cir. 1986) (citing *Leon*, 468 U.S. at 926; *Massachusetts v. Sheppard*, 468 U.S. 981, 988 (1984)).  This exception has its own exceptions, including that good faith does not attach if "the warrant was based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable."  *United States v. Jobe*, 933 F.3d 1074, 1077 (9th Cir. 2019).  "An affidavit is so lacking in indicia of probable cause, or bare bones, when it fails to provide a colorable argument for probable cause."  *Underwood*, 725 F.3d at 1085 (citing *United States v. Hove*, 848 F.2d 137, 139–40 (9th Cir.1988)).

Here, for all the reasons detailed above, each of the challenged affidavits were supported by more than colorable arguments.  None of them can be described as "bare bones."  Defendant essentially says that the suspected activity (14 minutes of uploading CSAM) could never support the charge of receipt of child pornography, but this is not the case.  The affidavits cite the specific criminal statutes being applied and describe facts relevant to them, showing probable cause.  *See* Dkt. # 33-1 at 22 (applying Washington statute to facts for ESPs warrant); Dkt. # 33-2 at 37–38 (same; residential warrant); Dkt. # 33-4 (comparing facts to definitions listed in 18 U.S.C. § 2256(8) in connection with the federal warrant).  *Cf. Manavalan*, 2026 WL 21420, at *7 (concluding that the good-faith exception applies because the affidavit "contained substantial evidence" and "cited the specific criminal statutes at issue.").  Thus, the good-faith exception applies, and this is an independent ground for denying the motion.

//

ORDER - 11

## IV

### CONCLUSION

For the reasons above, the Court DENIES the motion to suppress.

Dated this 8th day of April, 2026.

John H. Chun
United States District Judge

ORDER - 12